United States District Court
Southern District of Texas

**ENTERED**

August 18, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOSTON SHIP REPAIR LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-405 |
| | § | |
| OCEAN SHIPS INC, | § | |
| | § | |
| Defendant. | § | |

**ORDER AND OPINION**

Before the Court is Boston Ship Repair, LLC's ("BSR's") Motion for Partial Summary Judgment Related to Weather Delays. (Document No. 51). Ocean Ships, Inc. ("OSI") has filed a Response (Document No. 52), and BSR filed a Reply (Document No. 56). Having considered these filings, the facts in the record, and the applicable law, the Court concludes that BSR's Motion is DENIED.

**Background**

This dispute centers on a Ship Alteration Contract, which required BSR to perform repairs on the USNS Soderman and the USNS Charlton[1] (the "Contract"). (Document No. 51-13). One of the work items on the USNS Soderman was Work Item 150 ("Item 150") entitled "Superstructure and Freeboard Painting." (Document No. 51-14). During the performance of the Contract, and particularly Work Item 150, BSR alleges that repairs were delayed due to "adverse/severe weather conditions and force majeure," which "caused BSR to expend additional time and resources and to incur additional costs in performing its scope of work." (Document No. 44 at 4). Because the delays were due to severe weather, BSR argues that the Contract entitled it to time extensions and delay damages, neither of which were granted by OSI.

---

[1] Repairs to the Charlton are not at issue here.

(Document No. 51 at 7). Therefore, BSR has filed breach of contract claims against OSI, asking for delay damages and acceleration costs (due to OSI's failure to grant extensions). BSR also asks that it not be required to pay liquidated damages due to the late delivery of the vessel.

The provision relating to weather in the Contract (the "Weather Clause") states:

> (b) I. The Contractor [BSR] shall be responsible for the entire ship from the time of delivery to the Contractor until the OSI Port Engineer accepts it for redelivery. Responsibilities include preventing weather related damage to the Vessel, delays to the production schedule or reduction in quality of work performed resulting from inclement weather. All costs for implementing preventive measures during the performance period shall be borne by the Contractor. *Any potential additional costs are expected to be proportional to the anticipated severity and likelihood of adverse weather conditions based on historic norms.* All Vessel's parts, equipment, systems, etc., damaged or destroyed by weather, which could have been prevented through appropriate Contractor actions/preparations shall be repaired or replaced, as original, at the Contractor's expense. *The Contractor is responsible for all costs incurred by weather-related delays or deficiencies unless the weather is proven excessive based on historical norms for the contractors area over the past 20 years.* This information is available from the National Climatic Center in Ashville, NC.

(Document No. 51-13 at 1-2) (emphases added). The dispute regarding this language centers upon the parties' differing interpretations of the historical weather norms. The parties differ wildly in their application of this clause, resulting in different calculations of days which were "adverse" during the performance of the Contract, and days which were "adverse" in the historical period. For example, "[u]nder BSR's construction, a day during the Historical Period should be treated as 'adverse' only if it actually would have affected production," and "days during the Performance Period" should only be treated as adverse if weather actually prevented BSR from working; therefore BSR focused on weather during "typical" working hours. (Document No. 51 at 16). Under BSR's interpretation, weather was excessive according to past norms (i.e. BSR experienced more adverse days while performing the Contract than was typical over the past 20 years). Conversely, OSI "determined the historically normal weather conditions based on the possibility of work occurring at any time," measuring the temperature and

precipitation at all hours of the day (for example OSI considered that painting may have occurred at night). (Document No. 52 at 12). Under OSI's interpretation, the weather was not excessive compared to historical norms.

The Contract Specifications provide:

No coatings shall be applied under unfavorable weather conditions unless the work is well protected from such conditions, and then only after the approval of the OSI Port Engineer and PPG Representative. No coatings are to be applied during condensing humidity, or if this condition is expected to occur during the application of the coating. In general, coatings should not be applied if the relative humidity is 85% or above, as a 5 degree drop in temperature will produce condensation.

(Document No. 51-14 at 150-3). BSR also claims that it "was prohibited from applying paint when the steel surface temperature was below twenty (20) degrees Fahrenheit ('F'), or when there was more than a five (5) degree F difference between the steel temperature and the dew point," and that it was "prohibited from painting at night." (Document No. 51 at 4).

Other relevant portions of the Contract are as follows:

2.4 All work shall be completed in 90 calendar days from actual start date designated by OSI at time of Contract award or upon such other date as shall be mutually agreed upon in writing by the Parties. . .

2.5 Should Contractor fail to redeliver either Vessel on the date specified herein with the Work having been fully completed, and such failure is not caused by Force Majeure, Contractor shall pay to OSI, as liquidated damages, the sum of $89,814.00 (US$) per Vessel per day…

3.6 Contractor shall perform the Work during normal working hours in accordance with its practice and rules, using employee or contracted labor at Contractor's discretion. Should any overtime work be carried out or should additional contract labor be required, the expense incurred as a result of working overtime or employing contract labor shall be borne by the party requesting same except OSI will in no circumstances be liable for additional labor expense occasioned by Contractor attempting to meet the redelivery date specified in Paragraph 2.4.

(Document No. 51-13 at 4, 8).

## Standard of Review

"It is well settled that a contract to repair a vessel is maritime."[2] *Alcoa S.S. Co. v. Charles Ferran & Co.*, 383 F.2d 46, 50 (5th Cir. 1967). "[T]he construction of a maritime contract is governed by federal, not state, law." *Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge Mr. Charlie*, 424 F.2d 684, 691 (5th Cir. 1970). "Applying federal law in the contract context includes looking to 'principles of general contract law' that can be found in treatises or restatements of the law." *Int'l Marine, L.L.C. v. FDT, L.L.C.*, 619 F. App'x 342, 349 (5th Cir. 2015) (citation omitted).

"A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004) (citations omitted). "The terms of a maritime contract are given their plain meaning unless the provision is ambiguous." *Weathersby v. Connoco Oil Co.*, 752 F.2d 953, 956 (5th Cir. 1984).  If a contract's "language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation," it is not ambiguous. *Chembulk Trading*, 393 F.3d at 555 n.6. "Under federal maritime law, 'a court may not look beyond the written language of [a contract] to determine the intent of the parties unless the disputed contract provision is ambiguous.'" *Int'l Marine*, 619 F. App'x at 349 (citing *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332-33 (5th Cir. Unit A Aug. 1981)). "If a contract contains ambiguities, it generally becomes the task of the fact-finder to use extrinsic evidence to determine the intent of the parties. When a contract is ambiguous, it is for the jury to determine the meaning of its terms, subject to

---

[2] There is no dispute among the parties that the Contract is a maritime contract and the Court agrees. Furthermore, the Contract provides that Texas law applies where no federal common law exists: "This contract shall be governed by and construed in accordance with General Maritime law, as applicable and thereafter, the laws of the State of Texas without regard to conflict of laws." (Document No. 51-13 at 20).

proper instructions and based upon 'evidence of the surrounding circumstances and the practical construction of the parties.'" *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 422 (6th Cir. 2008).

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The interpretation of maritime contract terms is a matter of law. *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). The Court may not make credibility determinations. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

Discussion

There are three issues which BSR asks the Court to decide in its Motion for Partial Summary Judgment: (1) that BSR was entitled to time extensions; (2) that BSR is entitled to prove its delay damages pursuant to the weather clause, and that it is permitted to recover its costs to accelerate the work (due to the lack of time extensions); and (3) that OSI may not recover liquidated damages for any days for which BSR was entitled to a contract time extension. (Document No. 51 at 29). The Court finds that summary judgment is not appropriate

on the first two issues, largely due to the ambiguity of the Weather Clause. The third issue is moot, as described below.

*Ambiguity of the Contract*

The Court agrees with BSR that the Contract is ambiguous as to "how the twenty (20) year historical data should be interpreted and applied." *Id*. at 16. The Contract states that BSR "is responsible for all costs incurred by weather-related delays or deficiencies unless the weather is proven excessive based on historical norms for the contractors area over the past 20 years. This information is available from the National Climatic Center in Ashville, NC." (Document No. 51-13 at 2). However the Contract provides no details regarding the interpretation of such data. On its face the Contract provides an unambiguous standard to determine whether BSR is responsible for all costs incurred by weather-related delays or deficiencies, but when this language is applied to the current facts it is unclear how to measure the weather. The remainder of the Contract does not provide any further guidance, and the Specification only mentions weather in one section:

> No coatings shall be applied under unfavorable weather conditions unless the work is well protected from such conditions, and then only after the approval of the OSI Port Engineer and PPG Representative. No coatings are to be applied during condensing humidity, or if this condition is expected to occur during the application of the coating. In general, coatings should not be applied if the relative humidity is 85% or above, as a 5 degree drop in temperature will produce condensation.

(Document No. 51-14 at 150-3). Clearly there are additional weather patterns, other than humidity, which could be "unfavorable" and delay the project, including rain, snow, wind, or low temperatures.

Therefore the Contract contains a "latent ambiguity," which arises "when the contract appears to convey a sensible meaning on its face, but it cannot be carried out without further clarification." *Ludwig v. Encore Med., L.P.*, 191 S.W.3d 285, 290 (Tex. App. 2006) (citation omitted). "If a latent ambiguity arises […], parol evidence is admissible for the purpose of

ascertaining the true intention of the parties as expressed in the agreement. When a latent ambiguity arises, the focus shifts to the facts and circumstances under which the agreement was made." *Id*. Courts generally hold that, where a contract is ambiguous, interpretation of the contract becomes a question of fact, and therefore summary judgment is inappropriate. *Dell Computer Corp. v. Rodriguez*, 390 F.3d 377, 388-9 (5th Cir. 2004) (holding that where a latent ambiguity exists, interpretation of the contract becomes a question of fact); *Geoscan, Inc. of Texas v. Geotrace Techs., Inc.*, 226 F.3d 387, 390 (5th Cir. 2000); *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1358 (S.D. Fla. 2007), *aff'd*, 308 F. App'x 389 (11th Cir. 2009) ("When a maritime contract is ambiguous, a factual question is presented to the meaning of its provisions and 'the fact finder must interpret the contract's terms, in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning.'") (citing 11 Richard A. Lord, Williston on Contracts § 30:7 (4th ed. 2006)); *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 422 (6th Cir. 2008); *Jones v. Francis Drilling Fluids, Ltd.*, 613 F. Supp. 2d 858, 866 (S.D. Tex. 2009).

Furthermore, other genuine issues of material fact exist. For example, it is unclear whether BSR was allowed to, or ever did, paint at night. BSR states that it was not allowed to paint at night. (Document No. 51 at 4). However, OSI disputes this, and the alleged MSC directive not to paint at night (which BSR refers to) is described as merely a guideline in the instructions. (COMSC Instruction, Document No. 52-6 at 2). This is important because BSR argues that a day with temperatures under 20 degrees should not be counted as adverse if those low temperatures occurred only at night, and therefore focused on recorded daytime temperatures in its weather analysis.[3] (Document No. 51 at 13; Document No. 52-10 at 164).

---

[3] There is also testimony that low temperatures at night could prevent painting the next day, if the steel temperature failed to rise. (Document No. 52-5 at 107).

This issue is further confused by the fact that it appears that in some weeks of Contract performance there were painters working several hours of overtime (up to fifty-seven hours in one week), suggesting that BSR may have been performing work outside of its usual time period of 7:00 to 3:30. (Document No. 52-8 at 18; Document No. 52-10 at 164). In addition, neither party's weather report (Document Nos. 51-20, 52-10) provides discussion of humidity, the only weather condition which specifically prohibited painting under the Specification. (Document No. 51-14 at 150-3). Therefore the Court believes that summary judgment based on this portion of the Contract is not appropriate.

BSR argues that the Court should grant summary judgment in its favor, because "OSI, as the drafter of the Contract language in question, bears the burden of poorly drafted or incomplete language under the doctrine of *contra proferentem*." (Document No. 51 at 21). "The general rule for choosing between competing interpretations of ambiguous contract language is *contra proferentem*, which requires that ambiguities be construed against the drafter." *Record Steel & Const., Inc. v. United States*, 62 Fed. Cl. 508, 517 (2004) (citations omitted). The elements of the rule are: "(1) that the contract specifications were drawn by the [party against whom the doctrine is asserted]; (2) that language was used therein which is susceptible of more than one interpretation; (3) that the intention of the parties does not otherwise appear; and (4) that the contractor *actually and reasonably construed the specifications* in accordance with one of the meanings of which the language was susceptible." *Id*. (emphasis added). However, the genuine issues of material fact still prevent a grant of summary judgment in favor of BSR, because those open issues prevent the Court from finding that BSR's interpretation of the Contract is reasonable. For example, if BSR performed some painting at night, it would not be reasonable for it to only use daytime weather data. Furthermore, the Specification contains references to "off

hour, night shift, or week-end inspections," suggesting that, even if painting were not allowed at night, other progress could occur. (Document No. 51-14 at 150-2). This further calls into doubt BSR's focus on daytime weather, because, presumably, a nighttime inspection could be delayed by weather.

Additionally, as noted by OSI, "BSR has failed to provide any evidence that painting was planned on every day it is claiming." (Document No. 52 at 17). If some portions of the work could be done in any weather, then the planned activity for the day with adverse weather becomes relevant. (*See* Document No. 52-10 at 169) (explaining that prep work can be done in any weather). For example, if BSR were scheduled to perform prep work on a day with adverse weather, there would not necessarily be a delay in the performance of the Contract. Similarly, in her deposition, Connors mentioned that "[t]here's some paints you can paint down to zero degrees that we were using. Those are a non-issue, obviously, unless you get down to zero; but the 20 degrees was the factor as far as applying paint to the hull for that one particular paint, which is a primer coat." (Document No. 52-10 at 164). If some paint could be applied at lower temperatures, then some days with low temperatures may not be adverse, according to BSR's attempt to interpret the weather only where "it actually would have affected production." (Document No. 51 at 16).

Overall, in addition to the issues of material fact, BSR's interpretation of the Contract is not reasonable because it focuses on painting conditions to the exclusion of all else.[4] The

---

[4] The depositions of Bertram Churchill and Donna Connors demonstrate this. For example, Churchill considers the "historic average of projected *no paint* days." (Document No. 51-7 at 145). In her deposition, Connors discusses BSR's method of measuring the weather repeatedly in the context of painting only:

> So as far as historical, I would go in for that day and I would locate when the temperatures arrived, because we work from 7:00 to 3:30, typically. So if during the day you had a temperature of 32 degrees and at night it fell down to 17 degrees, *that's not going to affect your painting at all*. You can't consider that a cold day that you can't paint, because you've painted during 32-degree weather.
>
> [...]

Contract included a variety of work beyond painting;[5] therefore it is illogical for BSR to measure the weather conditions solely in the context of painting.[6]

 *(1) time extensions and acceleration costs*

No language in the Contract suggests that BSR would be entitled to time extensions due to inclement weather (outside of the norms or otherwise). The Weather Clause states that, in the case of excessive weather, the Contractor is not responsible for "*costs* incurred by weather-related delays or deficiencies," but makes no mention of *time* extensions due to weather. (Document No. 51-13 at 2). The Contract also explicitly states that extensions are only allowed by mutual agreement between the parties: "[a]ll work shall be completed in 90 calendar days from actual start date designated by OSI at time of Contract award or upon such other date as shall be *mutually agreed upon* in writing by the Parties." *Id.* at 4. As a result, BSR instead argues generally that "if a contractor provides evidence of unusually severe conditions, he is entitled to an extension of time for weather-related delays." (Document No. 51 at 22) (citing *Edge Constr. Co., Inc. v. United States*, 95 Fed. Cl. 407 (2010); *Broome Constr., Inc. v. U.S.*, 492 F.2d 829, 834 (Ct. Cl 1974)).[7] As discussed above, fact issues remain as to whether the weather during the

---

Q. So rather than use the calendar days for temperatures and rainfall, you used the work days -- or the working hours for historical temperatures and average rainfall; is that a fair statement?

A. For the most part yes, but if it rained -- so as part of the analysis, if it rained at 5:00 o'clock at night that night and it rained continuously throughout the night, then it affected -- *if you're looking at strictly paint* and not prep, because prep you can do in any weather, right? Prep doesn't -- when you're UHPing, it doesn't matter if you're UHPing in the rain, sleet, or snow. It doesn't -- it has no affect on weather, as far as prep. *You're talking strictly paint at this point*, but if I saw that at 5:00 o'clock at night it started raining and rained until 7:00 o'clock the next morning, *then that affects paint for that day*. So yes, I -- it wasn't just working hours. It was if it rained at 5:00 o'clock at night, obviously, I couldn't paint before that because we knew it was going to rain, so you can't paint during the day.

(Document No. 52-10) (emphases added).

[5] The Specification refers to a variety of other work, such as surface preparation. (Document No. 51-14).

[6] Finally, the Court feels that *contra proferentem* is generally inappropriate here, because "*contra proferentem* is a rule of last resort" and "is applied only when other approaches to contract interpretation have failed." *Jacintoport Int'l LLC v. United States*, 121 Fed. Cl. 196, 202 (2015) (citing *Gardiner, Kamya & Assocs., P.C. v. Jackson*, 467 F.3d 1348, 1352 (Fed. Cir. 2006)). Therefore the Court should not resort to *contra proferentem* before the factfinder attempts to interpret the Contract.

[7] Both cases cited by BSR apply to *government* contracts, and therefore to suits against the United States; BSR does not cite any case law applying imputing this requirement into a contract between private entities. Although the

project was "unusually severe," according to the Contract or to general standards. Therefore the Court does not find that BSR was entitled to time extensions.

BSR also argues that, "because OSI refused to grant contract time extensions when it should have, BSR is entitled to acceleration costs." (Document No. 51 at 22). BSR states that OSI "constructively accelerated BSR's work on the Project," by refusing to grant a contract time extension in the face of excusable delays. *Id.* (citing *Mactec, Inc. v. Bechtel Jacobs Co., LLC*, 346 F.App'x 59, 63 (6th Cir. 2009)). To preserve its right to recover for "constructive" acceleration, a contractor must prove that:

> 1. An "excusable" or "compensable" delay to the critical path was encountered that justified an extension of contract time; 2. A time extension was requested pursuant to the terms of the contract; 3. The requested extension was wrongfully rejected or otherwise ignored; 4. Express or implied direction was given to complete the contract by the unextended completion date; 5. Timely notice of an intent to pursue an acceleration claim was given; and 6. Performance was actually accelerated and damages suffered as a result.

5 Bruner & O'Connor Construction Law § 15:94. BSR's claim of constructive acceleration is not entitled to summary judgment for two reasons. First, the fact issues regarding the weather prevent a determination that the delay was "excusable." Second, time extensions were not included in the Contract; therefore BSR cannot argue that "a time extension was requested *pursuant to the terms of the Contract*." *See also* Bramble and Callahan, Construction Delay Claims § 6.05 (5th ed. 2016) ("Traditionally, the first element that must be satisfied to recover additional costs for acceleration is the occurrence of what is termed an excusable delay*, which* means that the contractor *is entitled to an extension of time under the contract*. Without entitlement to a time extension, the contract completion date is enforced.") (emphasis added). Therefore the Court will not grant BSR's request for summary judgment on these issues.

United States owns the vessels, this Contract involves an agreement between a contractor and a subcontractor, not an agreement with the United States itself. OSI hired BSC as a sub pursuant to its contract with Military Sealift Command, a government agency.

*(2) delay damages*

BSR's entitlement to delay damages depends upon the interpretation of the Weather Clause, which, as described above, cannot be decided on summary judgment.

*(3) liquidated damages*

OSI originally asserted a counterclaim for liquidated damages against BSR, for delivering the vessel seven days late. (Document No. 21 at 4). However, in its Amended Counterclaim, OSI did not mention these liquidated damages. (Document No. 45).[8] "It is well settled that an amended pleading supersedes the pleading it modifies. Similarly, any alleged facts made in the original counterclaim and not incorporated in the amended counterclaim have been 'amended away.'" *Landmark Graphics Corp. v. Paradigm Geophysical Corp.*, No. CIV.A. H-05-2618, 2007 WL 189333, at *1 (S.D. Tex. Jan. 22, 2007) (citing 6 Charles A. Wright & Arthur R. Miller, Fed. Practice and Procedure § 1476, at 556 (2d ed. 1990); *Hibernia National Bank v. Carner*, 997 F.2d 94, 101 (5th Cir. 1993)). Therefore, this claim no longer existed, and BSR's Motion for Summary Judgment regarding liquidated damages is moot.

**Conclusion**

As described above, summary judgment in favor of BSR is not appropriate. OSI did not style its Response as a Motion for Summary Judgment, but at the end of the Response it does briefly ask that the Court "rule in its favor under Rule 56(f)(1)." (Document No. 52 at 18). This rule allows for "judgment independent of the Motion," so that the Court may "grant summary judgment for a nonmovant." Fed. R. Civ. P. 56. Due to the genuine issues of material fact described above, the Court will not grant this relief.

The Court hereby

---

[8] OSI also did not respond to BSR's arguments regarding liquidated damages in its Response to the Motion for Summary Judgment. (Document No. 52).

ORDERS that BSR's Motion for Partial Summary Judgment Related to Weather Delays (Document No. 51) regarding time extensions, acceleration costs and delay damages is DENIED. The Court also

ORDERS that the portion of the Motion (Document No. 51) relating to liquidated damages is MOOT.

SIGNED at Houston, Texas, this 18th day of August, 2016.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE